UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MAGDALENA KULISZ, *individually and d/b/a*
MISS IMMIGRANT USA, and SHAHAR
KENAN, *individually and d/b/a* MISS
IMMIGRANT USA, *on behalf of themselves and
all others similarly situated*,

              Plaintiffs,

        -against-

STEVEN RAGA, *in his individual and official
capacity as New York State Assemblymember*, and
JOHN DOE(S) and XYZ ORGANIZATION(S) 1-
10,

              Defendants.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-4893 (OEM)(PK)

ORELIA E. MERCHANT, District Judge:

On August 18, 2025, Plaintiffs Magdalena Kulisz ("Kulisz") and Shahar Kenan ("Kenan") (Kulisz and Kenan collectively "Plaintiffs") filed a *pro se* complaint in the United States District Court for the Southern District of New York.  Complaint, Dkt. 1 ("Complaint" or "Compl.").  Plaintiffs sue Steven Raga ("Raga"), John Doe(s) and XYZ Organization(s) 1-10 (Raga and John Doe(s) and XYZ Organization(s) 1-10 collectively "Defendant(s)").  Compl. ¶¶ 9-12.

On September 3, 2025, the action was transferred to this Court.  Transfer Order, Dkt. 10 ("Transfer Order").  On August 18, 2025, Plaintiffs each filed an application to proceed *in forma pauperis*.  Application to Proceed In District Court Without Prepaying Fees or Costs, Dkt. 2 ("Kulisz IFP Mot." or "Kulisz IFP Motion"); Application to Proceed In District Court Without Prepaying Fees or Costs, Dkt. 3 ("Kenan IFP Mot." or "Kenan IFP Motion") (Kulisz IFP Motion and Kenan IFP Motion collectively "IFP Motions").  On September 11, 2025, Plaintiffs moved to

retransfer the case to the United States District Court for the Southern District of New York

("SDNY") and later filed two additional motions seeking re-transfer.  *See* Plaintiffs' Motion to

Retransfer Case to the Southern District of New York, Dkt. 14 ("Motion to Re-Transfer"); Motion

for Status Conference and to Proceed with Service at 14-18, Dkt. 18 ("Second Motion to Re-

Transfer")[1]; Letter Motion/Request To (1) Rule on Plaintiffs' Retransfer Motion; And (2) Extend

Rule 4(M) And Hold Service In Abeyance Pending That Ruling; or In The Alternative, Direct That

Any Service Proceed Only on the Operative Amended Complaint (No Waiver), Dkt. 20 ("Third

Motion to Re-Transfer").  With their Motion to Re-Transfer, Plaintiffs filed an amended complaint.

*See* Motion to Re-Transfer at 20-109 ("Amended Complaint" or "Am. Compl.").[2]

Plaintiffs' IFP Motions are granted pursuant to 28 U.S.C. § 1915.  For the following

reasons, the Amended Complaint is dismissed, with leave to file a second amended complaint

within 30 days and Plaintiffs' Motion to Re-Transfer, Second Motion to Re-Transfer, and Third

Motion to Re-Transfer are denied.

**BACKGROUND**[3]

**A.  Complaint**

Plaintiffs state that they co-founded an organization in 2018 called "Miss Immigrant USA,"

"a New York-based civic initiative dedicated to empowering immigrants."  Compl. ¶ 5.  They state

that "Miss Immigrant Foundation Inc." was registered "as a nonprofit corporation" in Delaware in

---

[1] Page citations to the Second Motion to Re-Transfer refer to the automatically generated ECF pagination.

[2] Page citations to the Amended Complaint refer to the automatically generated ECF pagination.  A plaintiff may amend its complaint once as a matter of course within 21 days of service or a responsive pleading.  FED. R. CIV. P. 15(a).  Thus, there having been no service or responsive pleading yet, the Court construes the Amended Complaint as the operative complaint.  Further, in reaching its conclusion, the Court considers the facts as set forth in the Complaint and Amended Complaint, because a *pro se* complaint is to be read liberally.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

[3] The following facts are taken from Plaintiffs' Complaint and Amended Complaint and are accepted as true for the purposes of this Memorandum and Order.

2018.[4]  *Id.* ¶ 21.  Plaintiffs describe the early years of the organization and an early positive relationship with Raga, a member of the New York State Assembly representing District 30 in Queens.  *Id.* ¶¶ 9, 21, 32.

According to the Complaint, problems arose at a December 8, 2024, event, the World Fair and Fest in Queens.  *Id.* ¶¶ 30, 34-39.  That same day, Miss Immigrant USA introduced on-stage "Angela Aquino [("Aquino")], a candidate for New York City Public Advocate, as one of its delegates."  *Id.* ¶ 34.  After this introduction, Raga approached Kulisz and asked her to step outside for a private conversation.  *Id.* ¶¶ 36-37.  "He attempted to show her a social media post related to Miss Immigrant USA delegate Angela Aquino" and "demanded that Miss Immigrant USA 'immediately disassociate from Angela' and take public action."  *Id.* ¶¶ 38-39.  Kulisz stated that Raga was "angry" and that she felt "scared" and "shaken" during this conversation.  *Id.* ¶¶ 37, 39.

The next day, Raga sent a text message to Kulisz that included a screenshot of the social media post and a question: "Was she at the event last night as a political candidate?"  *Id.* ¶ 41; *id.* at 85-86 ("Exhibit A").  Raga requested a Zoom meeting with Plaintiffs, which was held on December 11, 2024.  *Id.* ¶¶ 44-68; *id.* at 88-101 ("Exhibit B").  During this meeting, Raga stated: "It looks like you guys are a 501(c)(3) organization, right?"; "So you have somebody affiliated with your organization wearing your sash, who is actively campaigning"; "She should not be campaigning while she is with you as Miss Immigrant"; and "If you're a nonprofit, you can't have a person on your time represent you and also run for public office."  *Id.* ¶¶ 54-55, 105.  Plaintiffs

---

[4] The Court takes judicial notice of the Delaware Department of State Division of Corporations website entry for Miss Immigrant Foundation" incorporated July 19, 2019, under File Number 7531506.  It states that it was filed as an "Exempt" corporation.  *See* https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx (last visited 3/9/26).  The website's Glossary of Terms defines "Exempt": "This description type refers to a corporation that meets requirements of section 501 of the Internal Revenue code and is exempt from taxation pursuant to Title 8 of the Delaware Code."  *See* https://icis.corp.delaware.gov/ecorp/FieldDesc.aspx#ENTITY%20TYPE (last visited 3/9/26).

3

describe these statements as an intent "to frame Miss Immigrant USA as noncompliant with nonprofit rules." *Id.* ¶ 56.

Raga also criticized Aquino for using a racial slur and suggested that Miss Immigrant USA could be sued as a result. *Id.* ¶¶ 63, 65. Raga stated that other organizations were "going to make a public statement against Miss Immigrant," and that "[o]ther people will write a press release about this." *Id.* ¶¶ 57-58. Plaintiffs characterize Raga's statements as a "campaign of intimidation"; "an organized effort to pressure and control the leadership of Miss Immigrant USA"; "a calculated campaign of interference"; and "political overreach and abuse of power." *Id.* ¶¶ 43-46.

Plaintiffs state that in the days after this meeting, they were targeted by "NYPD officers and medical personnel [who] trespassed onto Plaintiffs' private terrace and attempted the unlawful seizure of [Kulisz] under a medical pretense"; that they received a letter dated March 7, 2025 and addressed to Miss Immigrant USA from the New York State Attorney General's office about "nonprofit compliance"; and received a New York State sales tax demand dated February 28, 2025, for "'Miss Immigrant Foundation,' an entity Plaintiffs never registered or operated in New York State." *Id.* ¶¶ 74-76; *id.* at 102-03 ("Exhibit C"); *id.* at 104-07 ("Exhibit D"). Plaintiffs claim that they began receiving calls and messages from "individuals connected to Defendant Raga's networks." *Id.* ¶ 78.

As a result of these actions, Plaintiffs felt "extreme pressure" and developed physical and psychiatric symptoms. *Id.* ¶¶ 82-86. Speaking with their landlord about their conditions led to eviction proceedings. *Id.* ¶ 86. Other individuals and organizations shunned them; for example, Assemblymember Lester Chang "refused Miss Immigrant USA participation in community events due to social media posts critical of elected officials." *Id.* ¶ 87. "Miss Immigrant USA was forced

to cease all activities." *Id.* ¶ 88. "Plaintiffs lost all campaign management contracts, coaching fees, sponsorships, and partnerships as a direct result of Defendant's actions." *Id.* ¶ 90.

Plaintiffs purport to bring this action on their own behalf as individuals and "d/b/a Miss Immigrant USA." *Id.* ¶ 1. They also propose a class action on behalf of "current and prospective Miss Immigrant USA delegates" and all individuals who seek to participate in Miss Immigrant USA and engage in electoral campaigns for any public office." *Id.* ¶¶ 8, 15, 21.

Plaintiffs also allege that Defendants "John Doe(s) and XYZ Organization(s) 1-10, . . . participated in or facilitated the acts and omissions described herein." *Id.* ¶ 12. They do not ascribe any specific acts or omissions to these unidentified defendants.

Plaintiffs' Complaint asserts 30 causes of action, including claims pursuant to 42 U.S.C. § 1983 ("Section 1983") for violations of their constitutional rights under the First and Fourteenth Amendments and the New York constitution and of New York law. *Id.* at 37-79. They seek injunctive and declaratory relief and unspecified damages. *Id.* ¶ 91; *id.* at 80-82.

**B. Motion to Re-Transfer and Amended Complaint**

By Order dated August 22, 2025, the SDNY transferred this action to this Court because Raga resides in Queens County and the initial event giving rise to Plaintiffs' claims occurred in Queens County. Transfer Order at 2-3. Plaintiffs opposed this transfer in their Motion to Re-Transfer, Second Motion to Re-Transfer, and Third Motion to Re-Transfer. Plaintiffs argue that this action should be heard in SDNY and not this Court because Plaintiffs reside in Manhattan; they were located in Manhattan when they participated in a Zoom meeting and felt the alleged harm arising from the meeting; and they chose that forum. Motion to Re-Transfer at 1-2. Plaintiffs also request that summons be issued and served by the United States Marshals Service. Second Motion to Re-Transfer at 3; Third Motion to Re-Transfer at 2. They also request a status

5

conference.  Second Motion to Re-Transfer at 3, ECF.  Additionally, they request accommodations based on disability, including a renewed request to make filings through CM/ECF.  *See* Notice of Submission of Requests for Reasonable Accommodation, Dkt. 19 ("Motion for Leave to File Electronically").  On March 17, 2026, Plaintiffs submitted an additional letter motion renewing their request for accommodation and "related case-management relief" by way of a court order on their pending Motion to Re-Transfer, scheduling of a status conference, issuance of a scheduling order, direction of service, and extension of the time for service.  Letter-Motion and declaration in Support of Renewed Request for Disability-Related Accommodation (Disability Access) and for Ancillary Case-Management Relief at 2, Dkt. 22.

In their Third Motion to Re-Transfer, Plaintiffs renewed their request that the action be transferred back to SDNY and asked the Court to consider as the operative pleading an amended complaint dated September 3, 2025, that they had previously submitted as an attachment to their Motion to Re-Transfer.  *See* Third Motion to Re-Transfer at 2 (requesting that the attachment to the Motion to Re-Transfer be considered the operative amended pleading); *see generally* Am. Compl.

The Amended Complaint reframes the issue as "the constitutional right of citizens and immigrants alike to participate in democracy while openly expressing their identity and dignity through the Miss Immigrant USA sash."  Amended Complaint ¶ 2.  It describes the "Miss Immigrant sash" as "a form of symbolic expression entitled to the strongest First Amendment protection."  *Id.* ¶ 25.  It also alleges that Defendant's actions "chilled not only Plaintiffs but a broader class of civic participants who sought to engage in political and civic life while wearing the Miss Immigrant USA sash."  *Id.* ¶ 4.  It states: "By attacking the sash as a civic identity marker, his actions chilled not just one person but every immigrant, volunteer, and supporter who seeks to

6

wear it in joy and unity." *Id.* ¶ 20. "Suppressing the sash is therefore not merely organizational regulation – it is suppression of immigrant identity itself, symbolic expression squarely within the protection of the First Amendment." *Id.* ¶ 37.

The Amended Complaint introduces additional statements from the December 11, 2025, Zoom meeting. For example, when Raga asked "It looks like you are a 501(c)(3) organization, right?" Plaintiffs explained, as summarized in the pleading, "Miss Immigrant USA is not a 501(c)(3), but a nonprofit incorporated in Delaware, and not in New York." *Id.* ¶ 53. Or, as set forth in the transcription of the Zoom meeting, filed with the Complaint:

> 24. [**Steven Raga**:] It looks like you guys are a 501(c)(3) organization, right?
>
> 25: **Sha Kenan**: No.
>
> 26. **Steven Raga**: Oh. What are you? You're a business? It's a business?
>
> 27. **Sha Kenan**: We have a nonprofit organization in Delaware, but we didn't file 501.
>
> 28. 501 is to take donations, right? We didn't file it yet.
>
> 29. **Steven Raga**: But you're still a nonprofit?
>
> 30. **Sha Kenan**: Yes.
>
> 31. **Steven Raga**: You're a nonprofit?
>
> 32. **Sha Kenan**: Yes

Exhibit B at 89.

Without clarifying whether their organization was registered as or held itself out to be a tax-exempt non-profit organization under Section 501(c)(3) of the Internal Revenue Code, Plaintiffs assert that they "engaged in constitutionally protected electoral activities, including . . . maintaining policies permitting campaigning while wearing the Miss Immigrant USA sash." Am. Compl. ¶ 135. The Amended Complaint makes 39 additional references to the "Miss Immigrant USA sash," *id.* ¶¶ 3, 10, 14, 17, 18, 21, 75, 105, 113, 128, 130, 153, 159, 202, 255, 259, or the sash as a symbol of political expression or immigrant identity, *id.* ¶¶ 12, 19, 32, 37, 53, 79, 104-05, 108-09, 114, 116, 130, 136, 145, 155, 159-60, 162-64.

The Amended Complaint also provides partial names for individuals, including Poteri, Rachel, Sagir, and Soma, whom Plaintiffs say attempted to contact them after Raga's December 11, 2024, Zoom call by sending text messages, a Facebook message, or "attempting to arrange a phone call" or Zoom meeting. *Id.* ¶ 69. Plaintiffs state that they cut off communications "in order to protect themselves." *Id.* ¶ 70. Plaintiffs claim that Soma then "stopped communication altogether." *Id.* ¶ 71. Plaintiffs characterize both the efforts to contact them and the failure to communicate with them as "community pressure and informal retaliation." *Id.* ¶¶ 69-75.

The Amended Complaint asserts 15 causes of action under constitutional and New York State law. In addition to the First Amendment claims, the Amended Complaint also asserts claims under the Fourteenth Amendment for "class-of-one and identity-based discrimination" because Raga alleged "targeted immigrant identity . . . as expressed through the Miss Immigrant USA sash and name," *id.* ¶¶ 125-30; election interference, *id.* ¶ 134; abuse of government authority through transmission of notices from New York State agencies, *id.* ¶¶ 165-69, 192-95; and reputational injury related to Raga's statements during the December 11, 2024, Zoom meeting that were subsequently posted on-line by a third party, *id.* ¶¶ 216-30. The Amended Complaint also alleges a civil rights conspiracy involving Raga and "John Does(s) and XYZ Organization(s) 1-10, who allegedly "entered into an agreement and/or understanding with other individuals and organizations . . . to take coordinated action against Plaintiffs and Miss Immigrant USA in retaliation for protected political activities." *Id.* ¶¶ 197, 201. Plaintiffs present no additional evidence of such a conspiracy. Plaintiffs also assert claims under New York State law. *Id.* ¶¶ 231-58.

Further, the Amended Complaint references new Exhibits A-E, but no exhibits are attached. *Id.* at 109.

8

**STANDARD OF REVIEW**

Courts are required to give special consideration to *pro se* litigants, those individuals who represent themselves in court. This means that *pro se* litigants are not expected to meet the same standards required for formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). 28 U.S.C. § 1915(e)(2)(B), allows poor plaintiffs to file lawsuits without paying the usual filing fee. This statute requires a district court to dismiss a case if the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." To avoid dismissal, a complaint must include facts that show that the defendants may be responsible for the harm to the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, a complaint must include more than only "labels and conclusions" or a list of the elements of a cause of action. *Twombly*, 550 U.S. at 555. A complaint fails to state a claim if it includes only bare assertions with no factual details. *Iqbal*, 556 U.S. at 678.

A plaintiff seeking to bring a lawsuit in federal court must also establish that the court has subject-matter jurisdiction over the action. If the Court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3); *accord*, *Yong Qin Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000). Federal subject-matter jurisdiction is available only when a "federal question" is presented pursuant to 28 U.S.C. § 1331, or when plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000 pursuant to

28 U.S.C. § 1332.  "Simply raising a federal issue in a complaint will not automatically confer federal question jurisdiction."  *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 137 (2d Cir. 2002). There is no subject-matter jurisdiction if "the purported federal claim is clearly 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010) (quoting *Carlson v. Principal Fin. Grp.*, 320 F.3d 301, 306 (2d Cir. 2003)).

## DISCUSSION

### A.  Plaintiffs' Motion to Re-Transfer

Plaintiffs seek reconsideration of SDNY's Transfer Order transferring venue to the U.S. District Court for the Eastern District of New York ("EDNY").  Motion to Re-Transfer at 3-4. Pursuant to the general venue provision governing actions filed in district courts of the United States, a civil action must be filed in the judicial district in which any defendant resides or where a substantial part of the events or omissions giving rise to the claim occurred.  *See* 28 U.S.C. § 1391(b).  In this case, the only identified Defendant, Raga, resides in Queens County.  Plaintiffs argue that Raga violated their constitutional rights on two specific occasions: on December 8, 2024, when Raga confronted Kulisz at an event in Queens, Compl. ¶¶ 30, 34-39; and on December 11, 2024, when Raga, whose location was not specified, initiated a Zoom meeting with Plaintiffs, who were then located in Manhattan, *id.* ¶¶ 44-68.  Under these circumstances, where the Defendant resides in this District and the alleged harm occurred in both Queens and Manhattan, this Court finds that EDNY is a proper venue for this action pursuant to 28 U.S.C. § 1391(b).

Accordingly, Plaintiffs' Motion to Re-Transfer, Second Motion to Re-Transfer, and Third Motion to Re-Transfer, including reconsideration of the Transfer Order, are denied.

### B. Plaintiffs' Purported Class Action Representation

Plaintiffs purport to bring a class action on behalf of "current and prospective Miss Immigrant USA delegates" and all individuals who seek to participate in Miss Immigrant USA and engage in electoral campaigns for any public office."  Compl. ¶¶ 8, 15, 21; *see also* Am. Compl. at ¶ 12. *Pro se* Plaintiffs may not represent any other persons or entities, either individually or as a class representative.  "[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998).  "It is well settled in this circuit that *pro se* plaintiffs cannot proceed as class representatives." *McLeod v. Crosson*, 89 Civ. 1952, 1989 WL 28416, at *1 (S.D.N.Y. Mar. 21, 1989); *see also In re Purdue Pharma L.P.*, 25-CV-484 (CS), 2025 WL 2092262, at *3 (S.D.N.Y. July 25, 2025) ("The law is clear in this Circuit and elsewhere that '[b]ecause a nonlawyer cannot bring suit on behalf of others, a plaintiff proceeding *pro se* cannot act as a class representative.'" (quoting *Wallace v. All Pers. Liab. Carriers-Underwriters of Land,* 22-CV-8022, 2024 WL 1195120, at *2 (S.D.N.Y. Mar. 18, 2024))).  Moreover, "a layperson may not represent a corporation." *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997).

Accordingly, to the extent that Plaintiffs seek to bring claims on behalf of Miss Immigrant USA or any other individuals, these claims are dismissed.

### C. Plaintiffs' Constitutional Claims

The Complaint invokes Plaintiffs' constitutional rights, claims which may be cognizable under Section 1983.  To maintain a Section 1983 action, a plaintiff must allege two essential elements.  First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).  Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the

11

Constitution or laws of the United States." *Id.* To bring a claim pursuant to Section 1983, a plaintiff must show that each of the named individuals is personally liable for the alleged harm. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006).

Plaintiffs assert that Raga violated their First Amendment rights, but the only factual allegations against him arise from the two incidents on December 8, 2024, and December 11, 2024, as follows. At the December 8, 2024, event in Queens, Raga: (1) said derogatory things about non-party Aquino to Kulisz, *see* Am. Compl. ¶ 44, and (2) "insisted that Miss Immigrant USA immediately disassociate" from Aquino, *see id.* During the December 11, 2024, Zoom meeting, Raga: (1) advised Plaintiffs that nonprofit organizations could not engage in political campaigning and asked if their organization was registered under 501(c)(3), *see id.* ¶ 53; (2) warned Plaintiffs that political campaigning by a nonprofit organization and association with an individual who posted a racial slur could expose them to negative publicity, *see id.* at ¶ 89-91; and (3) warned Plaintiffs that the use of a racial slur by an associate could lead to lawsuits against Miss Immigrant USA, *see id.*

None of these statements, in themselves, suggest a violation of Plaintiffs' constitutional rights. Plaintiffs suffered no constitutional harm from the angry denunciation of a third party. Indeed, "verbal harassment, standing alone, does not amount to a constitutional deprivation." *Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)). Further, Defendant correctly advised that 501(c)(3) organizations are restricted from certain political activities. Although Plaintiffs construe Raga's advice about negative publicity and the possibility of lawsuits as a threat, they present no evidence that Raga initiated or coordinated any negative actions against them, such that they suffered an appreciable injury and

12

thus, the alleged violations are not actionable under Section 1983. *See Kravitz v. Fischer*, 9:12–CV–1011 (LEK/TWD), 2014 WL 4199245, at \*14 (N.D.N.Y. Aug. 22, 2014).

Plaintiffs also attempt to weave Raga's statements – together with unspecified messages from third parties and the receipt two months later of official communications from New York State agencies about their organization – into a civil rights conspiracy. *See* Am. Compl. ¶¶ 200-04. "In order to survive a motion to dismiss on [a] § 1983 conspiracy claim, [plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). Plaintiffs present no evidence of such a conspiracy. The letter from the New York State Attorney General's Office merely reminds Miss Immigrant USA of the requirement for charitable organizations with activities in New York State to register or seek exemption from registration. *See* Exhibit C at 103.[5] The tax statement from the New York State Department of Taxation and Finance reminds Miss Immigrant Foundation to file a sales tax return. *See* Exhibit D. If Plaintiffs have failed to comply with state requirements for nonprofit or for-profit organizations operating in New York, reminders of these failures do not constitute harassment by state agencies. In any case, Plaintiffs have failed to demonstrate that Raga was responsible for these letters and fail to allege facts showing an agreement between two or more state actors.

Plaintiffs also fail to assert any constitutional claims against "John Does" and "XYZ Organizations." Plaintiffs allege that certain individuals sent messages trying to get in contact and/or stopped communicating with them after the December 2024 events. Plaintiffs do not

---

[5] Page numbers refer to the automatically generated ECF pagination.

identify any harmful actions taken by these individuals or organizations, let alone allege that they were state actors who violated their constitutional rights.

Accordingly, Plaintiffs' constitutional claims against Defendants are dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).

### D.  Plaintiffs' New York State Law Claims

Federal district courts have discretion to exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  A district court may "decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c), (c)(3).  Here, having dismissed Plaintiffs' constitutional claims, which are based on a federal question under 28 U.S.C. § 1331, the Court declines to exercise supplemental jurisdiction over Plaintiffs' purported state-law claims.  *See Levy v. BASF Metals Ltd.*, 1:15-cv-7317-GHW, 2017 WL 2533501, at *9 (S.D.N.Y. June 9, 2017) (declining to exercise supplemental jurisdiction over state-law claims after federal claims were dismissed); *see also* 28 U.S.C. § 1367(c)(3).  Accordingly, Plaintiffs' New York State law claims against Defendants are dismissed for lack of supplemental jurisdiction.

### CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).  However, the Second Circuit has repeatedly stated that "[a] *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks, citation, and alterations omitted).  There is a possibility, though unlikely, that Plaintiffs could add facts that

would support a valid constitutional claim.  Accordingly, the Court grants Plaintiffs 30 days from the date of this Memorandum and Order to file a second amended complaint.  Plaintiffs are advised that, should they elect to file an amended complaint, they must plead sufficient facts to allege a violation of federal rights or statutes and identify the specific acts by specific defendants that violated their own individual rights.  An amended pleading completely replaces the prior complaint, so Plaintiffs are advised to include all relevant claims and any supporting documentation, with the caveat that the inclusion of lengthy and repetitive material impedes the Court's ability to manage its caseload and decide cases before it.  If filed, the amended complaint should be captioned "Second Amended Complaint" and bear the same docket number as this Order.  If Plaintiffs fail to file a second amended complaint within the time allowed, the Clerk of Court shall be directed to enter judgment and close this case.

Plaintiffs' Motion to Re-Transfer, Second Motion to Re-Transfer, and Third Motion to Re-Transfer, including request for reconsideration of the Transfer Order, are denied.

To the extent that Plaintiffs seek to bring claims on behalf of Miss Immigrant USA or any other individuals, these claims are dismissed.

Because the Court is dismissing Plaintiffs' Amended Complaint, the Plaintiffs' Motion for Leave to File Electronically is dismissed.  Should Plaintiffs file a second amended complaint that survives review under 28 U.S.C. § 1915(e)(2)(B), the Court will consider a renewed motion for leave to file electronically.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is respectfully directed to send a copy of this order to Plaintiffs at the mailing address and email addresses provided, including the email address provided in Notice of Change of Address/Contact Information (Pro Se), Dkt. 21, and to note the mailing on the docket.

Plaintiffs may contact the City Bar Justice Center's Federal Pro Se Legal Assistance Project at 212-382-4729 or online at https://www.citybarjusticecenter.org/projects/federal-pro-se-legal-assistance-project to make an appointment for free, confidential, limited-scope legal assistance at the Brooklyn Federal Courthouse.  The Federal Pro Se Legal Assistance Project is not a part of, or affiliated with, the Court.

SO ORDERED.

/s/
ORELIA E. MERCHANT
United States District Judge

March 19, 2026
Brooklyn, New York

16